ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

December 10, 2012

The Honorable Joseph C. Pickett
Chair, Committee on Defense and
   Veterans' Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0981

Re: Authority of a county to form a transportation reinvestment zone, collect an ad valorem tax increment, and pledge and assign all or part of the increment to secure bonds to pay the cost of a transportation project (RQ-1071-GA)

Dear Representative Pickett:

You ask whether a county is authorized to form a transportation reinvestment zone ("TRZ") for a transportation project, collect an ad valorem tax increment, and pledge and assign all or part of the tax increment receipts to secure bonds to pay the cost of a transportation project.[1] You also seek clarification of Attorney General Opinion GA-0953. Request Letter at 1.

You ask specifically about section 222.107 of the Transportation Code, which appears in chapter 222, subchapter E, concerning toll facilities. *See* TEX. TRANSP. CODE ANN. §§ 222.101–.110 (West 2011 & Supp. 2012). Section 222.107 authorizes a county to create a TRZ for a pass-through toll project under section 222.104. *See id.* § 222.107(b) (county TRZs); *id.* § 222.104 (pass-through tolls). A county commissioners court may designate an area as a TRZ "after determining that an area is unproductive and underdeveloped" and that action under section 222.107 would further specified statutory purposes. *Id.* § 222.107(c); *see also id.* § 222.105(2) (statement of statutory purposes, including the "facilita[tion of] the improvement, development or redevelopment of property").

The order designating a TRZ must also designate an ad valorem tax increment base year. *Id.* § 222.107(f)(2), (4)–(5). When the county collects ad valorem taxes thereafter, it may pay an amount representing the county's TRZ tax increment, less certain amounts, into an ad valorem tax increment account. *Id.* § 222.107(h)(1); *see also id.* § 222.107(a) (providing the formula for establishing a county's ad valorem tax increment for a particular year). Finally, subsection (i-1) provides that "[i]n the event a county collects a tax increment, it may issue bonds to pay all or part of the cost of a transportation project and may pledge and assign all or a specified amount of money in the tax increment account to secure those bonds." *Id.* § 222.107(i-1).

---

[1]*See* Letter from Honorable Joseph C. Pickett, Chair, Comm. on Def. and Veterans' Affairs, to Honorable Greg Abbott, Tex. Att'y Gen. at 1–2 (July 16, 2012), http://www.texasattorneygeneral.gov/opin ("Request Letter").

Thus, section 222.107 sets forth a statutory scheme that, so long as it is consistent with the Texas Constitution, would allow a county to form a TRZ, collect an ad valorem tax increment, and pledge an amount of money in the tax increment account to secure bonds issued to pay a transportation project's costs. However, because section 222.107(i-1) purports to authorize a county to issue ad valorem tax increment bonds secured with a pledge of the ad valorem tax increment account, we must consider the issue we reserved in Attorney General Opinion GA-0953—the potential constitutional limitations on a county's authority to engage in ad valorem tax increment bond financing. *See* Tex. Att'y Gen. Op. No. GA-0953 (2012) at 2.[2]

In Attorney General Opinion MW-337, this office determined that the Tax Increment Financing Act of 1979 (the "1979 Act"), on its face, violated the constitutional requirement that "[t]axation shall be equal and uniform." Tex. Att'y Gen. Op. No. MW-337 (1981) at 5; *see* TEX. CONST. art. VIII, § 1(a). The opinion determined that by authorizing a taxing authority to pledge the future increase in ad valorem taxes over a set base level—the tax increment—to the payment of tax increment project costs, the 1979 Act caused an unequal distribution of the ad valorem tax burden. Tex. Att'y Gen. Op. No. MW-337 (1981) at 5. The opinion observed that all of the value of property outside of the tax increment district would be taxed to pay the general expenses of the taxing authority while only a portion of the value of property inside the district would be taxed for those purposes. *Id.* Consequently, the opinion determined, the 1979 Act was unconstitutional absent an enabling constitutional amendment. *Id.*

In 1981, the Legislature proposed and the voters approved an amendment to article VIII, section 1-g(b) of the Texas Constitution, which now provides as follows:

> The legislature by general law may authorize an *incorporated city* or *town* to issue bonds or notes to finance the development or redevelopment of an unproductive, underdeveloped, or blighted area within the city or town and to pledge for repayment of those bonds or notes increases in ad valorem tax revenues imposed on property in the area by the city or town and other political subdivisions.

TEX. CONST. art. VIII, § 1-g(b) (emphasis added). The plain text of the amendment enabled the Legislature to grant the authority to issue tax increment bonds to incorporated cities and towns, but it did not extend the Legislature's enabling authority to counties. *See Collingsworth Cnty. v. Allred,*

---

[2]Your request letter suggests that, because we answered your question in Attorney General Opinion GA-0953 on statutory grounds, we implicitly determined that no constitutional authorization is necessary for a county to issue tax increment bonds. *See* Request Letter at 1. Your suggestion is inaccurate. In GA-0953, we determined that because a county lacks statutory authority to engage in tax increment bond financing of improvements under chapter 311 of the Tax Code, it was not necessary to consider potential constitutional impediments to the exercising of that authority. Tex. Att'y Gen. Op. No. GA-0953 (2012) at 2. Following the practice of the courts, we generally consider "constitutional questions [only] when we cannot resolve issues on nonconstitutional grounds." *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003). Nothing in GA-0953 suggests that a county with statutory authority to issue ad valorem tax increment bonds may do so in the absence of clear constitutional authority.

40 S.W.2d 13, 15 (Tex. 1931) (observing rule of constitutional construction that the statement of one thing implies exclusion of others). More recently, in 2011, the Legislature proposed a constitutional amendment that would have enabled it to enact laws authorizing counties to issue ad valorem tax increment financing bonds, but the amendment was rejected by the voters. *See* Tex. H.R.J. Res. 63, 82d Leg., R.S. (2011).

The article VIII, section 1(a) requirement of equal and uniform taxation applies to counties. *See Parker Cnty. v. Spindletop Oil & Gas Co.*, 628 S.W.2d 765, 767 (Tex. 1982). We are not aware of any basis for determining that a county is authorized by the Texas Constitution to issue bonds secured by a pledge of an ad valorem tax increment. Consequently, we conclude that a county's issuance of tax increment financing bonds secured by a pledge of the county's ad valorem tax increment would be subject to constitutional challenge as violating the equal and uniform taxation requirements in article VIII, section 1(a) of the Texas Constitution.

### S U M M A R Y

A county's issuance of tax increment financing bonds secured by a pledge of the county's ad valorem tax increment would be subject to constitutional challenge as violating the equal and uniform taxation requirements of article VIII, section 1(a) of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chairman, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee